**SPERRY RAND CORPORATION,**
Appellant in 13,678,

v.

**KNAPP–MONARCH COMPANY,**
Appellant in 13,679.

**Nos. 13678, 13679.**

United States Court of Appeals Third Circuit.

Argued Jan. 23, 1962.

Decided Aug. 8, 1962.

Kalodner, Circuit Judge, dissented in part.

Zachary T. Wobensmith, 2d, Philadelphia, Pa. (Clyde A. Norton, Henry Turin, New York City, on the brief), for Sperry Rand Corporation.

Norman Lettvin, Chicago, Ill. (George J. Harding 3rd, Busser, Smith & Harding, Philadelphia, Pa., Norman Lettvin, George B. Newitt, Bair, Freeman & Molinare, Chicago, Ill., on the brief), for Knapp-Monarch Co.

Before KALODNER, STALEY and SMITH, Circuit Judges.

SMITH, Circuit Judge.

These appeals are from a judgment entered in an action under the patent

laws and involve the usual issues of validity and infringement. The patent in suit, No. 2,253,037, issued in August 19, 1941, on an application filed by one Raymond Knapp in November of 1937. The court below held claims 1, 5 and 11 invalid and not infringed; it held claim 13 valid and infringed. The defendant has abandoned its appeal from that portion of the judgment which relates to claim 5.

## PATENT IN SUIT

■ The patent in suit, admittedly owned by the defendant, covers a cutter head employed in an electric dry shaver of the flat-face type. The subject of the respective claims is a combination, the elements of which are presumptively old in the art. Richards v. Chase Elevator Co., 159 U.S. 477, 486, 16 S.Ct. 53, 40 L.Ed. 225 (1895); Pierce v. Aeronautical Communications Equipment, 255 F. 2d 458, 462, 463 (5th Cir. 1958), and the cases therein cited. This presumption aside, the elements of the invention as defined are, in fact, old in the art. The claims in issue must be scrutinized "with a care proportioned to the difficulty and improbability of finding invention in an assembly of old elements." Great Atlantic & Pacific Tea Company v. Supermarket Corp., 340 U.S. 147, 152, 71 S.Ct. 127, 95 L.Ed. 162 (1950).

The invention is defined broadly in claim 11, which is typical, as follows:

"A hair clipper comprising two spaced plate sections formed of sheet metal and having their *end portions bent outwardly and then inwardly toward each other to form a flat skin contacting surface* and separated from each other *by a longitudinal extending imperforate rib*, a spacer between said plate sections, means for securing said spacer and plate sections together, slots in said plate sections extending through and transversely of the outer bends exclusive of the rib, and a movable cutter within the plates provided with spaced teeth on opposite sides of the rib making shearing contact with the slotted portions of the plates on the flat face only thereof and means for reciprocating the cutter." (Emphasis by this Court.)

The novelty in the invention as defined, according to the defendant, "lies in the specific combination of" the elements.

The invention of claim 11 is comprised of the following elements: (a) An outer cutter stamped from a thin metal sheet the end portions of which are bent outwardly and then inwardly toward each other, thereby forming a flat surface and side walls; (b) an imperforate channeled rib extending longitudinally through the midde of the flat surface; (c) a multiplicity of transverse notches extending through the outer bends and inwardly toward, but short of, the rib; and (d) a reciprocable inner cutter provided with a multiplicity of spaced teeth on opposite sides of the rib and so disposed within the outer cutter as to permit "shearing contact" on the flat surface only. The essential inventive features, according to the specifications, are: (1) a construction which permits utilization of sheet or other thin metal; (2) the specific arrangement of structural elements; and (3) The use of the imperforate rib to reinforce "the bottom part of the plate where it engages the face".

We see no reason to quote claim 13 of the patent in suit. It varies from the invention defined in claim 11 in that the end portions of the metal sheet, of which the outer cutter is made, are bent outwardly and then inwardly so as to form pronounced convex corners along the opposite linear edges of the flat surface. The inner cutter is so disposed within the outer cutter that the teeth of the former are in spaced relation to the convex corners so that the shearing contact occurs only on the flat surface. This arrangement of the structural elements also provides "a comb-like action." The defendant contends that the invention of claim 13 embodies as an additional inventive feature the convex corners in spaced relation to the teeth of the inner cutter. The "comb-like" action is ascribable to

the specific arrangement of the structural elements.

## PRIOR ART

█ The cited references, except the French patent to Gaiztarro, are not prior art in the usual sense, but their disclosures are relevant and material to the issues of prior invention and patentability. Alexander Milburn Co. v. Davis, etc., Co., 270 U.S. 390, 399, 46 S.Ct. 324, 70 L.Ed. 651, et seq., (1926); Ellis-Foster Co. v. Reichhold Chemicals, 198 F.2d 42, 44 (3rd Cir. 1952); Van Der Horst Corporation of America v. Chromium Corporation, 197 F.2d 791 (2nd Cir. 1952); Permo, Inc. v. Hudson-Ross, Inc., 179 F.2d 386, 389 (7th Cir. 1950). A patent issued on an application antedating the application for the patent in suit is the equivalent of a printed publication and speaks as of the date of the application regardless of the date on which the patent issues. Ibid. Such a patent must be given a construction consistent with the scope of its disclosures.

The patent to Gaiztarro, issued in July of 1935, fully and adequately describes an electric dry shaver and the cutter assembly therein employed. The cutter assembly comprises the following elements: (a) an outer cutter, consisting of two rows of cutters in spaced relation and separated by a *channeled rib, the horizontal plane of which is imperforate.* Each row of cutters is provided with a multiplicity of transverse notches extending across the flat surface and through the outer and inner linear corners thereof; the said corners are rounded and extend slightly beyond the plane of the side walls of the outer cutter; (b) a reciprocable inner cutter structurally identical with that of the outer cutter, except that the corners of the flat surface are rectangular and do not extend beyond the plane of the side walls of the inner cutter. It seems obvious that the structural elements are so arranged as to provide a shearing action on the flat surface only and a comb-like action.

The patent to Schmitt, No. 2,099,537, issued in November of 1937, on an application filed on July 17, 1936, relates to an electric clipper and dry shaver. This reference discloses a cutter mechanism comprising the following: (a) a rectangular outer cutter; (b) a multiplicity of transverse notches extending through and across the flat surface thereof; (c) a multiplicity of "blades," alternately disposed between the notches, having tapered projections "for guiding the hair into the [notches] for the cutting operation"; (d) a reciprocable inner cutter rectangular in shape and comprised of the following: (1) a multiplicity of transverse notches extending through and across the flat surface thereof; (2) side-wall recesses "adjacent the tapered end projections." The transverse notches of the inner cutter are in spaced relation to the tapered end projections of the outer cutter, thereby providing "clearances for hairs, particularly long ones, to straighten out prior to the cutting operation." The shearing action occurs on the flat surface only, and the arrangement of the structural elements provides a comb-like action.

The patent to Gur Arye, Patent No. 2,281,434, issued in April of 1942, on an application filed on September 23, 1936, antedating the application for the patent in suit by more than a year. We consider as particularly relevant and material not only the disclosures of the specifications but the pertinent claims relating thereto. The specifications fully and adequately describe a cutter head made of sheet metal and the claims define as inventions the several variants of such a head.

The cited patent discloses and claims several variants of a cutter head, one of which comprises the following: (a) an outer cutter stamped from a thin metal sheet the end portions of which are bent outwardly and then inwardly toward each other, thereby forming a flat surface and curved side walls; (b) an imperforate land extending longitudinally through the middle of the flat surface; (c) a multiplicity of transverse notches extending through the outer bends and inwardly to the linear margins of the

land; and (d) a reciprocable inner cutter mounted in a frame and comprised of the following: (1) an imperforate channeled rib extending longitudinally through the middle of the flat surface; and (2) a multiplicity of spaced teeth on opposite sides of the rib. The object of the rib, according to the specifications, is to impart "rigidity and inflexibility to the movable cutter structure itself."

It is clear from the reading of the specification that the inner cutter is so disposed within the outer cutter that the teeth of the former are in spaced relation to the transverse notches extending through the outer bends of the latter. The notches extending through the bends of the outer cutter serve "as a comb to direct the hair into position to be cut by the operative cutter parts," and the shearing action occurs on the flat surface only. It is stated in the specifications: "It will be seen that I have provided an exceedingly simple structure having an integral comb-like wall formed from the very same member that provides the cutter teeth." (The term "cutter teeth" as herein used refers to the transverse notches extending across the outer cutter). The specifications recommend: "The angle of divergence of the side walls from the cutter edge may be varied as desired, the sharper the angle the greater the comb-like action of the side wall teeth."

The relevance of the Wimberger Patent, No. 2,141,582, lies in its disclosure of cutters made of sheet metal and an arrangement of structural elements substantially similar to that hereinabove described. There is implicit in his specifications an admission that outer and inner cutters stamped from sheet metal and provided with a multiplicity of transverse notches were known in the art. The relevance of the patent to Kendall, No. 2,104,929, lies in its disclosure of convex corners extending along the opposite linear edges of the outer cutter and the utilization of a longitudinal rib to reinforce the face of the outer cutter. This reference discloses a structure in which the inner cutter is so disposed

within the outer cutter that the teeth of the former are in spaced relation to the convex corners so that the shearing contact occurs only on the flat surface. We reject as remote and irrelevant the patents to Andis and Fourniols.

## VALIDITY

We can dismiss as without merit any claim that the addition of a channeled rib as a reinforcing means arose to the dignity of patentable invention. The adoption of such an expedient would have been obvious to the mechanic skilled in the art. Smith v. Magic City Kennel Club, 282 U.S. 784, 792, 51 S.Ct. 291, 75 L.Ed. 707 (1931); Graham v. Jeoffroy Mfg., 206 F.2d 769, 771 (5th Cir. 1953). The channeled rib was disclosed by Gur Arye and Kendall and claimed by them as an essential element of their inventions.

When the claims in issue are read and construed in the light of the earlier disclosures, as they must be, the absence of patentable invention is clearly demonstrated. The inventions of the claims in issue comprise nothing more than aggregations of known elements in combinations in which these elements perform no functions or operations different from those theretofore performed in similar combinations. It is well established that such combinations do not meet the rigid test of patentable invention. Great Atlantic & Pacific Tea Company v. Supermarket Corp., supra; Cuno Engineering Corp. v. Automatic Devices Corp., 314 U.S. 84, 62 S.Ct. 37, 86 L.Ed. 58 (1941); Lincoln Engineering Co. of Illinois v. Stewart-Warner Corp., 303 U.S. 545, 58 S.Ct. 662, 82 L.Ed. 1008 (1938); Saranac Automatic Machine Corp. v. Wirebounds Patents Co., 282 U.S. 704, 51 S.Ct. 232, 75 L.Ed. 634 (1931). The claims in issue, including claim 13, held valid by the court below, are invalid. The improvement, if any, conceived by Knapp, required nothing more than mechanical skill.

The claims in issue are invalid for a further reason. We are of the opinion that the patent to Gur Ayre which is-

**348**

sued on an application which antedated that on which the patent in suit issued, negatives any claim to prior invention by Knapp. Alexander Milburn Co. v. Davis, etc., Co., supra; Ellis-Foster Co. v. Reichhold Chemicals, supra; Van Der Horst Corporation of America v. Chromium Corporation, supra; Permo, Inc. v. Hudson-Ross, Inc., supra. Neither the elements of the respective inventions nor their arrangements in the specific combinations are patentably distinguishable. An article of manufacture which embodies the combination defined by Knapp as his invention would be an infringement of the invention described by Gur Ayre. The earlier disclosure by Gur Ayre must therefore be regarded as anticipatory. Knapp v. Morss, 150 U.S. 221, 228, 14 S.Ct. 81, 37 L.Ed. 1059 (1893); Application of Slayter, 276 F. 2d 408, 411 (CCPA 1960). It follows that Knapp's claim to prior invention cannot be sustained.

The defendant argues that the inventions of the claims in issue satisfied an old and recognized want. Goodyear Tire & Rubber Co. v. Ray-O-Vac Co., 321 U.S. 275, 64 S.Ct. 593, 88 L.Ed. 721 (1944). The argument is not supported by the evidence. There was some evidence that the manufacturers, in a highly competitive market, were continuously engaged in efforts to improve their products. There was no evidence, however, of a generally recognized demand for a particular type of electric shaver. Whatever the demand, it is apparent from the record that the Knapp shaver did not meet it. The Knapp shaver was manufactured and sold by the defendant between 1937 and 1941, and was thereafter withdrawn from the commercial market. This in itself is persuasive evidence that it failed to achieve commercial success.

The part of the judgment which held claims 1 and 11 invalid and not infringed is supported by the evidence and will be affirmed. The part of the judgment which held claim 13 valid is not supported by the evidence and will be reversed. The action will be remanded to the District Court for the entry of judgment consistent with this opinion.

KALODNER, Circuit Judge (concurring in part, dissenting in part).

I would affirm the judgment of the District Court in Appeal No. 13,678 and Appeal No. 13,679 for the reasons so well stated in the opinion of Senior Judge Kirkpatrick in Sperry Rand Corp. v. Knapp-Monarch Company, reported at 193 F.Supp. 756 (E.D.Pa.1960).